**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| WILSON THEODORE, *et al.*, | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. 2:24-cv-224-EWH-LRL |
| EQUIFAX INFORMATION SERVICES, LLC, | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Wilson Theodore and Lashanda Theodore ("Plaintiffs") filed this Class Action against Defendant Equifax Information Services, LLC ("Defendant" and "Equifax"), a "Big-3" consumer reporting agency alleging on a class basis that Defendant negligently and willfully violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"), § 1681e(b), by failing to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it furnishes regarding a set of account tradelines reported by subscribers acting as lenders and servicers to finance the sale – and theoretically the installation – of solar power equipment at the homes of class members by a now-defunct company, Power Home Solar, LLC d/b/a Pink Energy ("Pink Energy") (ECF 1). Specifically, Plaintiffs alleged that Equifax inaccurately or incompletely furnished consumer reports regarding the Plaintiffs and putative class members when it "blindly accepted the reporting of loans fraudulently created by now bankrupt" Pink Energy ("Id. at ¶2). Plaintiffs made this claim under 15 U.S.C. § 1681e(b) on behalf of a class of similarly situated consumers. Equifax denied each of Plaintiffs' allegations and asserted numerous defenses, including that it is not subject to the FCRA and that Plaintiffs could not bring their claims as class claims.

The litigation (or arbitrations) against the various Pink Energy lending partners continues in multiple venues. And Plaintiffs themselves having made written disputes to Equifax still possess their individual claims under 15 U.S.C. §1681i(a). However, the Parties have spent months now negotiating a reasonable way to cause the removal of these alleged fraudulent accounts from the credit reports of other consumers nationwide. Plaintiffs and their Counsel believe this proposed Settlement accomplished that goal and does so in a way that sacrifices close to nothing for class members. In fact, the only release consumers will suffer is to forgo further prosecution of a claim for injunctive relief, a remedy generally seen as unavailable under the FCRA absent settlement.

Under Federal Rule of Civil Procedure 23, Plaintiffs and Equifax now seek preliminary approval of the proposed class action settlement. The parties request that the Court preliminarily certify the proposed class and the proposed Rule 23(b)(2) settlement by entering the proposed Preliminary Approval Order. A final motion and proposed order supporting the fairness of the proposed class action settlement will be submitted: (1) after implementation of the Notice Plan; and (2) before the Court's Final Approval Hearing.

For the reasons explained below, the proposed class action settlement is reasonable, fair, and adequate, and the Court should preliminarily approve it.

## I. SETTLEMENT TERMS

### *a. The Settlement Class*

Under the Settlement Agreement, the parties agreed to resolve the claims of a nationwide Rule 23(b)(2) class ("Settlement Class") defined as:

> The "Settlement Class" is defined as the U.S. consumers who have a Pink Energy Loan reported on their Equifax credit file at any time during the Class Period. Excluded from the Settlement Class are (i) Equifax, any entity in which Equifax has a controlling interest, and Equifax's officers, directors, legal representatives, successors, subsidiaries, and assigns, and (ii) any judge, justice, or judicial officer

presiding over the Lawsuit and the members of their immediate families and judicial staff.

(Settlement Agreement § 3.1.) "Pink Energy Loan" is defined as "a loan issued to a consumer by Goodleap LLC, Solar Mosaic LLC, Sunlight Financial Holdings, Inc., Cross River Bank, and Dividend Solar Finance, LLC to purchase solar panels or related products from Pink Energy." (Settlement Agreement § 1.1.)

***b. Injunctive Relief to the Settlement Class***

Equifax is one of the "Big-3" nationwide consumer reporting agencies. It furnishes credit reports regarding U.S. consumers, including the Settlement Class. Plaintiffs contend that the Pink Energy related tradelines, financing product never fully or functionally provided and significant unlawful and undisclosed finance charges. (ECF 1 *in passim*). The result for most of these consumers is an indebtedness reported for a product they cannot use. The loans are high-interest and disproportionately end in default or delinquency.

As a result of the Settlement Agreement, Equifax has agreed to cease the reporting of this set of loans. This has the practical effect of limiting the remedies these lenders may have to impact consumers without asserting a claim in court. (If the Pink Energy lenders were to sue a consumer, they would face significant counterclaims. And as arbitration is cost prohibitive, the binding mandatory arbitration clause generally operates only as to the consumer.) More specifically, Equifax would be ordered to take reasonable steps to:

(a) Delete any tradelines currently reporting on Settlement Class Members' Equifax credit files that pertain to a Pink Energy Loan;

(b) Suppress tradelines pertaining to Pink Energy Loans from Settlement Class Members' credit files such that those tradelines will not be included within Settlement Class Members' credit files in the future; and

(c) Implement internal procedures reasonably designed to suppress or delete tradelines pertaining to a Pink Energy Loan in the event Equifax receives a dispute made in accordance with the FCRA from a Settlement Class Member relating to such tradeline.

(Settlement Agreement ¶4.1.)

***c. Class Action Fairness Notice***

Equifax will provide notice of the proposed settlement under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"). The CAFA Notice will be sent to the Attorney General of the United States and to the attorneys general of all states and the District of Columbia and all U.S. territories. (Settlement Agreement § 14.1.)

***d. Attorneys' Fees, Costs, and Service Awards***

Class Counsel will apply for attorneys' fees and costs in an amount approved by the Court, but not to exceed $180,000. (*Id.* § 6.1.) This will reflect Counsel's lodestar. Plaintiffs also will apply for a service award of $5,000 each for their role as class representatives to compensate them for their efforts in prosecuting this case including, but not limited to, retaining counsel and staying apprised of and participating in settlement negotiations. (*Id.* § 6.2.)

***e. Release of Claims***

In return for the injunctive relief described above, Plaintiffs and the Settlement Class Members will agree to a limited waiver of the right to bring a class action against Equifax and related parties for the reporting of these Pink Energy Loans at issue in this litigation. (*Id.* § 2.27.) Importantly, the Settlement Agreement specifically reserves the right to bring individual claims against Equifax and the other Released Parties for damages, including punitive damages, under the FCRA or any state equivalent statutes. (*Id.*) Even damages class cases are not released. Class

Members will also still be allowed to use the FCRA's important fee-shifting provision when bringing their individual claims, allowing them to select qualified counsel to represent them. (*Id.*)

***f. Notice and Exclusions***

Although class notice is not required for a class certified under Rule 23(b)(2), the Settlement Agreement has adopted a Notice Plan that will include the following:

1. As soon as practicable following preliminary approval, the court-appointed Settlement Administrator, who has extensive experience in administering class action settlements, will create a Class Settlement Website which shall post important settlement documents, such as the Settlement Agreement and the Court's Preliminary Approval Order, as well as a description of the Injunctive Relief to be provided and a copy of the Injunctive Relief Order. The Website shall further contain a frequently asked questions page, procedural information regarding the approval process, and details on the final approval hearing. (Settlement Agreement §5.3(a).)
2. The Settlement Website shall also contain the Internet Notice attached to this Memorandum, which explains the lawsuit and the settlement terms.
3. The Settlement Administrator will provide e-mail notice for all class members for whom such address is provided or can be reasonably obtained. (*Id*. §5.3(b).
4. Finally, the Settlement Administrator will create and maintain a toll-free number that provides pre-recorded information on the Settlement in both English and Spanish and directs callers to the Class Settlement Website.

(Settlement Agreement §5.) Equifax will be responsible for the costs of this Notice Plan. (*Id.* § 5.1.) As this is a Rule 23(b)(2) class, there will be no right to opt-out of the Settlement, though Settlement Class Members may still object to the Settlement Agreement.

## II. ARGUMENT

### *a. Certification Standard*

Courts within the Fourth Circuit favor resolution of litigation before trial. *See, e.g.*, *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts." (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910))). Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while reducing the burden on judicial resources. As the court observed in *Stone*:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)). Rule 23 permits courts to preliminarily certify a class to carry out a settlement of the case. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 793–94 (3d Cir. 1995) (collecting cases). A court may grant preliminary approval of a class action where the proposed class satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), as well as one of the three subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). If the Court determines that a settlement class should be certified, it then should follow a three-step process before granting final approval of a proposed settlement. *Levell v. Monsanto Rsch. Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000).

First, the Court should preliminarily approve the proposed settlement. *Id.* at 547. Second, class members are provided notice of the proposed settlement as determined appropriate by the Court. *Id.* Third, a final fairness hearing must be held, after which the Court should decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole and consistent

with the public interest. *Id.* This protects the class members' procedural due process rights and enables the Court to fulfill its role as the guardian for the class's interests. *Id.* Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.*

Rule 23 governs the certification of class actions. In considering a settlement at the preliminary approval stage, the first question for the Court is whether a settlement class satisfies Rule 23's requirements, and thus may be conditionally certified for settlement purposes. Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a).

Here, the parties have reached a proposed agreement on behalf of the Settlement Class, which should be certified.

***b. The Settlement Class Meets the Certification Elements***

*i. The Settlement Class satisfies Rule 23(a)*

1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984). But where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News*

*Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (holding 18 class members sufficient).

The numerosity requirement is easily met here. There are estimated to be just less than 30,000 Settlement Class Members, including Plaintiffs. Joinder of this many individuals is neither possible nor practical, so the first prong of the certification test has been met. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003).

2. Commonality

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). And the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Id.* at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory").

Here, by definition, the Settlement Class Members share questions of law and fact. The Settlement Class Members allege that Equifax inaccurately included in a consumer report tradelines reported by subscribers it knew or should have known were unreliable, or alternately without any basis to believe them reliable. Plaintiff alleged that Defendant had notice of the illegality of these loans and did nothing to prevent their reporting. The practices at issue for these claims are identical across all class members, as is the fact that all Settlement Class Members are

in fact alive. The theories of liability as to the Settlement Class Members therefore arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. *See* Fed. R. Civ. P. 23(a).

3. Typicality

In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322. Commonality and typicality tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011).

Plaintiffs' class claims arise from Equifax procedures for determining the reliability of a subscriber before including its tradelines in credit reports. As discussed in the previous section, these are the same claims advanced on behalf of the Settlement Class Members, and Plaintiffs are members. Thus, in seeking to prove their claims, Plaintiffs will advance the claims of Settlement Class Members. This is the hallmark of typicality. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing Fed. R. Civ. P. 23(a)(3)).

4. Adequacy of Representation

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here. Plaintiffs understand and have accepted the obligations of class representatives, has adequately represented the interests of the putative class, and has retained experienced counsel who have handled many consumer-protection class actions. Plaintiffs' counsel has handled several consumer-protection and complex class actions, typically as lead or co-lead counsel. *See Dreher v. Experian Info. Sols., Inc.*, No. 3:11-cv-00624-JAG, 2014 WL 2800766, at *2 (E.D. Va. June 19, 2014); *Clark v. Trans Union, LLC*, No. 3:15-cv-391, 2017 WL 814252, at *13 (E.D. Va. Mar. 1, 2017) (collecting cases and stating, "This Court has repeatedly found that [proposed Class Counsel] is qualified to conduct such litigation. . . . This Court echoes the sentiments previously stated about [proposed Class Counsel] because they pertain here with equal vigor." (citations omitted)); *Heath v. Trans Union*, No. 3:18-cv-720, ECF No. 61, Prelim. Approval Hr'g Tr. at 9:8-9 (E.D. Va. Aug. 6, 2019) (Class Counsel's "reputation in this district, and I am sure in others, [is] sterling"); *In re Think Finance*, No. 17-33964, ECF No. 1432, Tr. of Proceedings at 40:18-21 (Bankr. N.D. Tex.) (the court "had two or three sets of law students that sat through this, and each time I told them that when you come into this hearing you'll see some of the best lawyers in America, and I still feel like that today"); *Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at *8 (E.D. Va. Dec. 18, 2020) (finding that class counsel "have extensive backgrounds in complex and class action litigation and consumer protection litigation"); *Gibbs v. TCV V, L.P.*, 3:19-cv-789, ECF No. 97, Fairness Hr'g

Tr. at 139:10-17 (E.D. Va. Mar. 25, 2021) ("The representation by class counsel is certainly adequate. I don't want to belabor the issue at the expense of folks, one, getting tired of hearing me, but, two, also maybe feeling a little too good about themselves. But it is the case that the track record here and the success of litigating complex cases, and specifically in tribal payday lenders, is, I think, as high as it gets in this country."); *see also* Declaration of Leonard Bennett ¶¶ 5-7 (attached as Ex. 1) ("Bennett Decl.").

Plaintiffs have no antagonistic or conflicting interests with the Settlement Class Members. Plaintiffs and the Settlement Class Members alike seek relief for Equifax's allegedly unlawful actions. Plaintiffs are members of the Settlement Class and have no conflicting interests with other Settlement Class Members. Plaintiffs also have been active in this case from the beginnings. (*See* Bennett Decl. ¶ 32.) As a result, the Settlement Class Members are adequately represented to meet Rule 23's requirements.

*ii. The Settlement Class satisfies Rule 23(b)(2)*

If the requirements of Rule 23(a) are met, the proposed class must then fall into one of the categories set out in Rule 23(b) to warrant certification. *Berry*, 807 F.3d at 608. The Settlement Class is an injunctive-relief-only settlement class under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *Berry*, 807 F.3d at 608-09 (citing *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 329 (4th Cir. 2006)). Simply, Rule 23(b)(2) certification is proper "if members of the proposed class would benefit from the injunctive relief." *Cuming v. S.C. Lottery Comm'n*, No. 3:05-cv-03608-MBS, 2008 WL 906705, at *6 (D.S.C. Mar. 31, 2008) (citing *Thorn*, 445 F.3d at 331). In addition, any request for monetary relief by the class must be "incidental" to the injunctive relief

before certification under Rule 23(b)(2) is appropriate. *Berry*, 807 F.3d at 609. The Rule 23(b)(2) Settlement Class here satisfies both requirements.

Plaintiffs allege on behalf of the Rule 23(b)(2) Settlement Class that Defendants' practices and procedures failed to satisfy § 1681e(b)'s "reasonable procedures" requirement. Here, the Settlement Agreement treats all Rule 23(b)(2) Settlement Class Members alike in granting them the substantial benefits of the changes to Equifax's practices. Injunctive relief is a powerful, efficient, and effective way of protecting broad interests like the accurate reporting and handling of consumer information, especially when, as here, out-of-pocket monetary losses are sometimes difficult to prove based on the violation of such interests. While Equifax maintains that it has always acted in compliance with the law, the fact that the Settlement modifies Equifax's conduct for the Settlement Class as a whole makes it appropriate for certification under Rule 23(b)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" (citation omitted)). The injunctive relief will provide a direct benefit to the Settlement Class Members going forward.

The Settlement also meets Rule 23(b)(2)'s second requirement that any request for monetary relief be merely "incidental" to the injunctive relief provided. Indeed, the Settlement does not provide monetary relief for Settlement Class Members. Moreover, like the members of the mandatory injunctive relief class in *Berry*, members of the Settlement Class here retain their ability to bring individual claims for actual damages, punitive damages, and attorneys' fees. *Berry*, 807 F.3d at 610 (quoting *Dukes*, 564 U.S. at 365). This retained right to bring further litigation "mak[es] class-wide representation possible and opt-out rights unnecessary." *Id.* at 612–13.

***c. The Settlement Satisfies the Requirements of Rule 23(e)(2)***

"Rule 23(e) of the Federal Rules of Civil Procedure obliges parties to seek approval from the district court before settling a class-action lawsuit." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020) (citing Fed. R. Civ. P. 23(e)). When a court "reviews a proposed class-action settlement, it acts as a fiduciary for the class." *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022). "In fulfilling this role, the district court must conclude that a proposed settlement is 'fair, reasonable, and adequate,'" which are the three requirements established by Rule 23(e)(2) of the Federal Rules of Civil Procedure. *Id.* (citing Fed. R. Civ. P. 23(e)(2)). "In determining whether a settlement is fair, reasonable, and adequate," Rule 23(e)(2) requires the court to consider:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorneys' fees, including timing of payments; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3);
>
> (D) the proposal treats class members equitably relative to each other.

*Galloway v. Williams*, 2020 WL 7482191, at *4 (E.D. Va. 2020) (quoting Fed. R. Civ. P. 23(e)(2)). In making this assessment, district courts are provided with "considerable deference" because "the court 'is exposed to the litigants, and their strategies, position[s], and proofs, and is on the firing

line and can evaluate the action accordingly.'" *Lumber Liquidators*, 952 F.3d at 484 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000)).

*i. Plaintiffs and Class Counsel Have Adequately Represented the Class.*

Rule 23(e)(2)'s first factor examines whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This assessment is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) (quoting Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 13:48 (5th ed. June 2021 update)). Rule 23's adequacy requirements are met if: "(1) the named plaintiff has interests common with, and not antagonistic to, the Class'[s] interests; and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." *Gibbs v. Stinson*, 2021 WL 4812451, at *16 (E.D. Va. Oct. 14, 2021) (quoting *Milbourne v. JRK Residential Am., LLC*, 2014 WL 5529731, at *8 (E.D. Va. Oct. 31, 2014)).

This first factor is easily satisfied. Plaintiffs' interests and those of Class Members are fully aligned as they were all subjected to the same deficient practices. *See, e.g.*, *Stinson*, 2021 WL 4812451, at *16 (finding that the plaintiffs were adequate in a comparable case because they had "no interests antagonistic to the class's interest" and shared "identical interest of establishing Defendants' liability based on the same questions of law and fact").

Additionally, Class Counsel has been practicing in the field of consumer protection for decades, and are amongst the top consumer and FCRA lawyers in the country, and they believe that this settlement stacks up very favorably when compared to other settlements over that time. (*See* Bennett Decl. ¶¶ 15-17, 31). Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See, e.g.*, *In re MicroStrategy*, 148 F. Supp. 2d at 665.

Given the substantial relief afforded the proposed settlement—especially when contrasted against the risks associated with litigating this matter—it is fair and appropriate for approval. *See S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991).

*ii. Negotiations Were at Arm's Length.*

The second factor examines whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see also Flint Water Cases*, 571 F. Supp. 3d at 780 (explaining that the second factor requires courts to "consider whether the negotiations were conducted at arm's length with no evidence of collusion or fraud"). "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Id.* (quoting *UAW v. Gen. Motors, Corp.*, 2006 WL 891151, at *21 (E.D. Mich. Mar. 31, 2006)). Here, there is no evidence suggesting the presence of collusion or fraud between the parties. In fact, as the docket shows, this relatively simple settlement took many months to negotiate as each word and concession – from e-mail exchanges, to a MOU and now to the Settlement Agreement was negotiated.

*iii. The Relief Provided to the Class is Adequate.*

Rule 23(e)(2)(C) requires the Court to consider whether the relief is adequate, considering:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). These subfactors overlap with the factors that the Fourth Circuit has held are required to evaluate a class settlement's fairness, reasonableness, and adequacy. *Lumber Liquidators*, 952 F.3d at 484 n.8 (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)). An analysis of each factor shows that this settlement is fair, reasonable, and adequate. It bears emphasis that, here, Class Members are giving up almost nothing in exchange for the removal of a tradeline, which provides a significant benefit.

The first Rule 23(e)(2)(C) sub-factor requires the Court to evaluate the settlement against the costs, risks, and delay of trial and appeal. This factor strongly supports approval of the settlement. While Class Counsel strongly believes in the strength of this case, they also acknowledge that there are substantial risks associated with continued litigation. Most notably, as Equifax itself suggested in its filed Rule 12(b)(6) Motion, there are legal arguments that confront the claims in this case – claims that are not plainly vanilla and, while correct, require legal and evidentiary work to establish same. (ECF 18.). From the start of litigation, Equifax has been adamant that it has defenses to Plaintiffs' claims. Were Equifax to dig in on its defenses, this case would involve substantial briefing at the class certification and summary judgment stages, as well as a trial and appeals.

Further, it is doubtful whether Plaintiffs could have forced and obtained injunctive relief under the FCRA without a settlement. As the Fourth Circuit observed in *Berry*:

> We may assume, as did the district court, that the FCRA, which does not provide expressly for a private right of action for injunctive relief, does not permit consumers to seek injunctive remedies. But like the district court, we think that is beside the point: "[I]n the settlement context, 'it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all.'"

807 F.3d 600, 610 (4th Cir. 2015) (citations omitted). The settlement avoids this significant cost, risk, and time by providing significant settlement benefits to the Class Members now.

Rule 23(e)(2)(C)'s second sub-factor requires the Court to evaluate the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims. Here, Class Members will receive significant settlement benefits automatically, without needing to establish any harm. This is important because "[t]he use of objective criteria to determine settlement distribution is a hallmark of fairness." *Flint Water Cases*, 571 F. Supp. 3d at 781. Because the injunctive relief applies across the board and requires no action by Class

Members, while preserving Members' rights to bring claims for individual damages, this factor weighs strongly in favor of approving the settlement.

Rule 23(e)(2)(C)'s third sub-factor requires the Court to evaluate the request for attorneys' fees, including the timing of the request. The focus of this analysis is whether there are signs that "counsel sold out the class's claims at a low value in return for [a] high fee." Conte & Newberg, *supra*, § 13:54. There are no such indications here. As outlined above, the Settlement Agreement obtains important changes to Equifax's practices that would otherwise not be obtainable through FCRA litigation alone. And although the Settlement does not include cash payments, Settlement Class Members may still seek full damages, including punitive damages and their attorney's fees, for the harm caused by Equifax's conduct. The Settlement thus preserves the rights of Settlement Class Members who were directly harmed by Equifax while obtaining course-correcting changes to the practices that were the cause of that harm in the first place.

It is also important to note that the attorneys' fee component of the settlement was only discussed after all other material settlement terms had been finalized. As to the timing of the attorney fee award request, "courts are to consider this to prevent situations in which the request for attorney fees is unknown and could upset the compensation to claimants at the time of final approval." *Id.* There is no such concern here, as the injunctive relief is unaffected by the possible fees award. This is particularly so where, as here, all fees and service awards would be paid solely by Equifax.

*iv. The Settlement Treats Class Members Equitably Related to Each Other.*

The final factor under Rule 23(e)(2) requires a court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D) (emphasis added). This factor considers whether class members have been treated in a fair and impartial manner, but "[t]here is no requirement that all class members in a settlement be treated equally."

*Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 876 (S.D. Iowa 2020) (emphasis in original) (citation omitted). And when considering this factor, a court "must balance the claims of those with potentially substantial damages with those with potentially minimal or insignificant damages." *Id.* (citation omitted).

As noted above, the Settlement Agreement provides for company-wide changes to Equifax's reporting that will significantly benefit consumers, while preserving the right of Class Members to seek damages if they have been harmed by Equifax's prior reporting practices. Thus, those with substantial or insignificant damages will still be able to pursue their claims, while using the FCRA's fee-shifting provisions to obtain qualified counsel to represent them. At the same time, those with insubstantial damages will still receive the direct benefits of the injunctive relief that will cause significant changes to the Equifax's business practices going forward.

***d. The Proposed Notice Plan Satisfies Rule 23***

Neither Rule 23 nor the case law requires individualized, mailed notice for a Rule 23(b)(2) settlement class, where class members do not have the opportunity to opt out of the settlement and are not required to take any affirmative action to receive the benefits of the settlement. Federal Rule of Civil Procedure 23(c)(2)(A) is explicit that even a litigated Rule 23(b)(2) class does not require any notice. Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(l) or (2), the court *may* direct appropriate notice to the class." (emphasis added)). Unlike class actions certified under Rule 23(b)(3), which require individual notice to class members and the opportunity to opt out of the settlement, class actions certified under Rule 23(b)(2) ordinarily do not require individual notice to class members because there is greater cohesion of interests in a (b)(2) class, as individual damages claims are not at stake. *See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457,466 (S.D. Fla. 2002) ("Notice (and exclusion opportunity) is not required in Rule 23(b)(2) actions."); 7B Charles Alan Wright et al., Federal Practice and Procedure

§ 1793 (3d ed. 2006) (stating that while Rule 23(b)(3) classes require mandatory notice, notice is not as important for Rule 23(b)(2) classes "because the class typically will be more cohesive"); Fed. R. Civ. P. 23 advisory committee's note (2003 Amendments) (explaining that "[t]he authority to direct notice to class members in a (b)(1) or (b)(2) class should be exercised with care" because there is no right to request exclusion and because of the potentially "crippl[ing]" cost of providing notice). As the Advisory Committee's notes to Rule 23 explain:

> The authority to direct notice to class members in a (b)(1) or (b)(2) class action should be exercised with care. For several reasons, there may be less need for notice than in a (b)(3) class action. There is no right to request exclusion from a (b)(1) or (b)(2) class. The characteristics of the class may reduce the need for formal notice. The cost of providing notice, moreover, could easily cripple actions that do not seek damages. The court may decide not to direct notice after balancing the risk that notice costs may deter the pursuit of class relief against the benefits of notice.

Fed. R. Civ. P. 23 advisory committee's note (2003). Accordingly, "most courts require notice only in exceptional circumstances where due process concerns argue in favor of it. Even then, the notice need not be the "best practicable" as in (b)(3) cases, but it can instead be more flexibly treated." § 8:3. Rule 23(b)(1)/(b)(2) certification notice discretionary—Rule 23(c)(2)(A), 3 Newberg and Rubenstein on Class Actions § 8:3 (6th ed.)

Though notice here is not meaningfully necessary, the Parties have nonetheless developed a plan to notify the Rule 23(b)(2) Settlement Class of the proposed settlement. The Attorneys General investigating and litigating claims against Pink Solar and the partnered lenders have received contact information for consumer who have purchased a Pink Energy system (or the promise of such a system) financed and reported by the subject lenders. The information is also available from the Pink Energy Bankruptcy Trustee, who has already obtained e-mail addresses for consumers who are class members here. Plaintiffs' counsel have confirmed with both he AGs and the Trustee that class member information will be provided for notice of this Settlement.

Equifax will use it to locate class member credit files and make the suppression or deletion of the subject accounts. And the Parties' proposed Settlement Administrator will receive and use the information to provide e-mail notice to class members.

## III. CONCLUSION

The proposed class action settlement is an excellent result considering the circumstances of the litigation and strength of Plaintiffs' case. The terms of the proposed class action settlement, as well as the circumstances of negotiations and its elimination of further costs caused by litigating this case through trial and appeal, satisfy the structures for preliminary approval.

For these reasons, Plaintiffs request that the Court issued the proposed Preliminary Approval Order.

Respectfully submitted,

**PLAINTIFFS**

By: *<u>/s/ Leonard A. Bennett</u>*

Leonard A. Bennett, VSB #37523
Thomas D. Domonoske, VSB #35434
Mark C. Leffler, VSB #40712
Adam W. Short, VSB #98844
John Maravalli, VSB #99000
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: tom@clalegal.com
Email: adam@clalegal.com
Email: john@clalegal.com

Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202

Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com

*Counsel for Plaintiffs*